**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

DON MICHAEL COX                                                          PLAINTIFF
ADC #165013

v.                                      3:22-cv-00275-KGB-JJV

DEXTER PAYNE,
Deputy Director, ADC; *et al.*                                        DEFENDANTS

**RECOMMENDED DISPOSITION**

The following Recommended Disposition ("Recommendation") has been sent to Chief

United States District Judge Kristine G. Baker.    Any party may serve and file written objections

to this Recommendation.    Objections should be specific and include the factual or legal basis for

the objection.    If the objection is to a factual finding, specifically identify that finding and the

evidence that supports your objection.    Your objections must be received in the office of the

United States District Court Clerk no later than fourteen (14) days from the date of this

Recommendation.    Failure to file timely objections may result in a waiver of the right to appeal

questions of fact.

**I.      INTRODUCTION**

Don Michael Cox ("Plaintiff"), who is a prisoner in the Arkansas Division of Correction

("ADC"), has filed a *pro se* Amended Complaint seeking relief pursuant to 42 U.S.C. § 1983.

(Doc. 4.)   His remaining claims are that while he was in the Grimes Unit Defendants Jackson,

Moss, Rogers, Smith, Cowell, Reed, Straughn, Lee, Holzbierlein, Hurst, and Penix violated his

First Amendment right to free speech and his Fourteenth Amendment right to equal protection

when they did not allow him to receive numerous publications, while allowing other inmates to

receive them.[1]  Plaintiff brings these claims against Defendants in their official and individual capacities.   And he seeks monetary damages as well as injunctive relief.

On May 23, 2023, I issued a Partial Recommended Disposition ("PRD") suggesting Defendant Penix be dismissed without prejudice due to a lack of service.  (Doc. 45.)   And on December 15, 2023, I issued a PRD suggesting Plaintiff be limited to proceeding with his constitutional claims only as to the eleven publications named in his properly exhausted grievances.[2]  (Doc. 66.)   Both PRD's are still pending.

The remaining parties have filed Cross-Motions for Summary Judgment arguing they are entitled to judgment in their favor as a matter of law.   (Docs. 70-75, 77.)   After careful review and consideration, I recommend: (1) Defendants' Motion for Summary Judgment be GRANTED, (2) the free speech and equal protection claims against the remaining Defendants be DISMISSED with prejudice, (3) Plaintiff's Motion for Summary Judgment be DENIED, and (4) this case be CLOSED.

## II.     SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.   *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).   The moving party bears the initial burden of

---

[1]  During screening, the Court dismissed Plaintiff's other claims and several Defendants without prejudice.  (Doc. 7.)

[2]  Those eleven publications are:   (1) Doll Buttman Brochure; (2) FIYA Girls Brochure; (3) High Caliber Brochure; (4) Inmate Connection.com Brochure; (5) KRASNYA Brochure; (6) South Beach Singles – Fresh Faces; (7) South Beach Singles – Black Cuties; (8) CNA Entertainment Brochure – Blossoming Young Ladies; (9) South Beach Singles – PAWG Vol. 1; (10) 4 the Pack Entertainment Brochure; and (11) EPS Brochure.   (Docs. 66, 77.)

demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating there is a genuine dispute of material fact for trial. *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner,* 663 F.3d 336, 340 (8th Cir. 2011). In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

## III.   FACTS

The following facts are undisputed. Plaintiff is a registered sex offender who is serving a twelve-year sentence in the ADC for distributing, possessing, or viewing child pornography. (Docs. 70-1; 70-2.) In 2019, Plaintiff was transferred to the Grimes Unit where he ordered more than one thousand publications through the mail. (Docs. 70-3; 70-4 at 6.)

ADC Administrative Directive 20-04 ("AD 20-04") says all arriving publications "are subject to inspection and may be rejected when the publication presents a danger to the security, discipline, or good order of the institution or is inconsistent with rehabilitative goals." (Doc. 70-9 at 1.) Specifically, the policy prohibits the receipt of "material that depicts nudity" with nudity being defined as a "depiction in which genitalia, buttock(s) or female breasts are fully exposed." (*Id*. at 2.) However, there is a caveat: "material that includes the depiction of nudity as illustrative of and as part of broader medical, educational, anthropological, or artistic content will not be rejected solely on the basis that the material includes nudity." (*Id*. at 3.)

From November 2021 to October 2022, Defendants decided Plaintiff could not receive eleven publications because they contained nudity. (Docs. 60-8, 77.) Each publication is a

3

brochure containing numerous pictures on each page of partially clothed, adult women in sexually suggestive poses, with some photographs being more explicit than others.  (Doc. 77.)   In many of the photographs, the women are wearing G-strings with fully exposed buttocks.  (*Id*.)   And at least one photograph shows fully exposed breasts.  (Doc. 77-10.)   Importantly, Plaintiff admitted during his deposition that none of the images fall under the caveat, in AD 20-04, for nudity that has medical, educational, anthropological, or artistic content.[3]   (Doc. 70-4 at 13.)

## IV.    DISCUSSION

### A.    Sovereign and Qualified Immunity

Defendants argue sovereign immunity and qualified immunity bar Plaintiff's request for monetary damages.   *See Murphy v. Ark.,* 127 F.3d 750, 754 (8th Cir. 1997) (sovereign immunity precludes monetary damages from being recovered against state officials sued in their official capacities); *Hamner v. Burls,* 937 F.3d 1171, 1175 (8th Cir. 2019) (qualified immunity bars recovery of monetary damages from state officials sued in their personal capacities).   But neither immunity doctrine prevents Plaintiff from obtaining injunctive relief, which is the heart of this case.   *Id.; Larson v. Kempker*, 414 F.3d 936, 939-40 (8th Cir. 2005).   Thus, the issue I must resolve is whether Defendants are entitled to summary judgment, as a matter of law, on the merits of Plaintiff's freedom of speech and equal protection claims.

---

[3] Thus, it is clear the photographs violated AD 20-04.   Plaintiff argues otherwise.   But even if he is correct, Plaintiff does not have a due process right under the Fourteenth Amendment to enforce compliance with the AD 20-04.   *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997).   Instead, as will be discussed herein, the relevant issues are whether the rejection of these eleven brochures violated Plaintiff's free speech rights under the First Amendment and his equal protection rights under the Fourteenth Amendment.

## B.    Freedom of Speech Claim

Prisoners have a First Amendment right to receive publications and photographs. *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989); *Odem v. Payne*, Case No. 4:22-cv-122-JM-JJV, 2023 WL 2351663, at *4-6 (E.D. Ark. Feb. 8, 2023), *rec. adopted,* 2023 WL 2352978 (E.D. Ark. Mar. 3, 2023).[4]  But it is not absolute.  A prison may prevent an inmate from receiving a publication if the reason for doing so is "reasonably related to legitimate penological interests." *Id.*; *Sisney v. Kaemingk*, 15 F.4th 1181, 1190-97 (8th Cir. 2021); *Hum. Rts. Def. Ctr. v. Baxter Cnty., Ark.,* 999 F.3d 1160, 1164 (8th Cir. 2021).  When making this determination, a court must consider: (1) whether there is a valid, rational connection between the prison regulation and a neutral, legitimate governmental interest; (2) whether alternative means exist for the inmate to exercise the constitutional right; (3) the impact accommodation would have on inmates, guards, and prison resources; and (4) whether ready alternatives exist to the prison regulation.  *Id.*; *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).  The first factor is a "threshold condition that the regulation must satisfy to pass constitutional muster."  *Sisney*, 15 F.4th at 1190.  If the threshold is satisfied, the court must then "determine the regulation's constitutionality by balancing the remaining three factors."  *Id.*; *see also Simpson v. Cnty. of Cape Girardeau, Mo.,* 879 F.3d 273, 279 (8th Cir. 2018).  And when doing so, "considerable deference" should be given to prison administrators who are better equipped than the judiciary at making decisions regarding institutional safety, order, and discipline.  *Thornburgh,* 490 U.S. at 408-409.

As to the first factor, the prison has the burden of proving a valid, rational connection between the restriction and a legitimate government interest.  *Thornburgh*, 490 U.S. at 415;

---

[4] I note Defendants' Brief (Doc. 71 at 7-12) has lifted, <u>verbatim,</u> substantial portions of my discussion in *Odem,* <u>without any citation to or mention of that opinion</u>.  Doing so was clearly unprofessional and especially ill-advised in a pleading submitted to the author of the uncited work.

*Sisney*, 15 F.4th at 1190-1191.    And the "governmental objective must be a legitimate and neutral one . . . without regard to the content of the expression." *Murchison v. Rogers*, 779 F.3d 882, 887 (8th Cir. 2015) (quoting *Turner*, 482 U.S. at 90).    In their sworn Declarations, Chief Deputy Director Reed and Superintendent Jackson explain that, in their extensive penological experience, photographs containing nudity create significant security risks because inmates use them to intimidate female staff, trade for contraband, and masturbate in the presence of staff which is a disciplinary infraction.    (Docs. 70-8, 70-6.)    They also say inmates often fight over the photographs, which is a security threat to inmates as well as guards.    (*Id*.)    And the presence of such photographs in prison is counter-productive to the rehabilitative goals of inmates, such as Plaintiff, who are incarcerated for sex crimes.    (*Id*.)    Plaintiff has not offered any contrary evidence.    *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) ("When the movant makes a prima facie showing of entitlement to summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact").

It is well settled that security, institutional order, and rehabilitation are legitimate penological interests.    *Simpson,* 879 F.3d at 281; *Murphy v. Mo. Dep't of Corr.,* 372 F.3d 979, 986 (8th Cir. 2004); *Dawson v. Scurr*, 986 F.2d 257, 261 (8th Cir. 1993).    And I find these objectives operate in a neutral fashion.    *See Thornburgh*, 490 U.S. at 415-16 (When "prison administrators draw distinctions between publications solely on the basis of their potential implications for prison security, the regulations are neutral"); *Sisney,* 15 F. 4th. at 1192-93 (prohibiting books because they contained "passages intended to serve no other purpose than to arouse the sexual desires of those reading the book," which is neutral objective, and not because they "advanced claims about human sexuality that the prison officials deemed subversive").

Accordingly, I conclude the first factor has been satisfied.

The second factor is whether Plaintiff has alternative means for exercising his right to free speech. *Thornburgh,* 490 U.S. at 418. Here, it is undisputed AD 20-04 allows Plaintiff to receive other publications that do not threaten the security and order of the prison. *See Id.* (the second factor is satisfied if the regulation permits "a broad range of publications to be sent, received, and read"). And Plaintiff said during his deposition (Doc. 70-4 at 19) that he was able to combat his "loneliness" by receiving other publications, such as *Venus* magazine, containing photographs of clothed women. *See Simpson*, 879 F.3d at 280 (the alternative means "need not be ideal, they need only be available"). Thus, I also find the second factor has been satisfied.

The third factor is the impact that allowing Plaintiff to have the eleven prohibited brochures would have on other prisoners, guards, and the allocation of prison resources. *See Thornburgh,* 490 U.S. at 414-18. As previously explained, Defendants say in their Declarations that allowing the prohibited brochures into prison would create security and disciplinary risks to prisoners and guards, as well as interfering with some prisoner's rehabilitation. *See Sisney*, 15 F.4th at 1193 ("*Turner's* third factor weighs in the defendants' favor because sexually explicit material is likely to find its way through bartering to the prisoner who finds it most sexually stimulating, potentially interfering with rehabilitation"). And Plaintiff has offered no contrary evidence. Accordingly, I conclude this factor also weighs in Defendants' favor.

The final factor asks whether there is "ready" or "easy" alternative that "fully accommodates the prisoner's rights at a *de minimis* cost to valid penological interests." *Turner,* 482 U.S. at 90-91; *Simpson,* 879 F.3d at 281. As explained by the United States Supreme Court, this "is not a least restrictive alternative test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional

complaint." *Turner,* 482 U.S. at 90-91.   During his deposition, Plaintiff said that rather than rejecting the entire brochure, Defendants should be required to individually evaluate each of the numerous photographs per page and cut out only the prohibited images.   (Doc. 70-4 at 15-16.) But prisons are not required to undertake such burdensome measures for the vast quantities of publications they receive each day.   *See Thornburgh*, 490 U.S. at 419 (1989) (upholding a complete ban on a publication because removing prohibited pages would be an administrative inconvenience); *Sisney*, 15 F.4th at 1192-93 (upholding ban on two books containing sexual material because "alternatives such as page-by-page censorship and monitored reading rooms are not obvious, easy alternatives").   Thus, I agree with Defendants this factor clearly weighs in their favor.   Because Defendants have prevailed on all four factors, I conclude they are entitled to judgment as a matter of law on Plaintiff's free speech claim.

### C.     Equal Protection Claim

Plaintiff alleges Defendants violated his equal protection rights under the Fourteenth Amendment when they did not allow him to receive the eleven brochures.   "The Equal Protection Clause generally requires the government to treat similarly situated people alike."   *In re Kemp*, 849 F.3d 900, 909 (8th Cir. 2018).   Because Plaintiff does not say he is a member of a protected class or that he was denied a fundamental right, he is raising what is often called a "class-of-one" equal protection claim.   *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).   To proceed to trial on that claim, Plaintiff must have evidence: (1) Defendants intentionally treated him differently; (2) from similarly situated prisoners; and (3) there was no rational basis for the difference in treatment.   *See Id.*; *Nolan v. Thompson,* 521 F.3d 989, 989-90 (8th Cir. 2008). During his deposition, Plaintiff said "at least 20 other inmates" had similar brochures rejected at the Grimes Unit, which contrary to his assertion of unequal treatment claim.   (Doc. 70-4 at 16.)

And, according to the ADC's records, the Central Office Publication Review Committee rejected several other inmates' publications because they contained nudity.  (Docs. 60-5, 60-6, 60-7, 60-8.)

In his summary judgment papers, Plaintiff now says inmates Johnny Young and Shane Price were allowed to receive similar or the same brochures he was not allowed to have.  (Docs. 74, 75.)   But he has not offered any evidence to substantiate that allegation.  *See Frevert v. Ford Motor Co*., 614 F.3d 466, 473-74 (8th Cir. 2010) (at summary judgment, "the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor").   And, more importantly, Plaintiff says both inmates were <u>not</u> sex offenders, which makes them invalid comparators.  *See Gilani v. Matthews*, 843 F.3d 342, 348 (8th Cir. 2016) (to establish an equal protection violation, the "two groups must be similarly situated in all relevant respects"); *In re Kemp*, 894 F.3d at 909 ("Absent a threshold showing that she is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim").   Accordingly, I conclude Defendants are also entitled to judgment, as a matter of law, on Plaintiff's equal protection claim.

## V.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1.    Defendants' Motion for Summary Judgment (Doc. 70) be GRANTED; Plaintiff's free speech and equal protection claims against Defendants Jackson, Moss, Rogers, Smith, Cowell, Reed, Straughn, Lee, Holzbierlein, and Hurst be DISMISSED with prejudice; and this case be CLOSED.

2.    Plaintiff's Motion for Summary Judgment (Doc. 73) be DENIED.

3.    The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis*

appeal from an Order adopting this Recommendation and the accompanying Judgment would not be taken in good faith.

    Dated this 28th day of June 2024.

                              _____
                              JOE J. VOLPE
                              UNITED STATES MAGISTRATE JUDGE